# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RAYMOND ALEXANDER SIMMS,**

        **Plaintiff,**

v.                                                                               Civil Action No. 1:11cv173
                                                                              (Judge Keeley)

**ZACK CURRENCE, R. EVANS,**
**O.R. CARTWRIGHT, E. ROFF,**
**V. LANCE, and J. MEADOWS,**

        **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On November 2, 2011, the *pro se* plaintiff initiated this case by filing a complaint against the above-named defendants. The plaintiff was granted leave to proceed without payment of an initial partial filing fee. On April 17, 2012, the undersigned reviewed the complaint and determined that there was insufficient information to determine whether the complaint should be served. Accordingly, the plaintiff was directed to file an amended complaint which clarified his claims. On May 14, 2012, the plaintiff filed his amended complaint. Upon a preliminary review of the amended complaint, the undersigned determined that summary dismissal was not appropriate at that time, and on May 18, 2012, an Order was entered directing the United States Marshal Service to serve the complaint.

On May 22, 2012, the summons for Zack Currence was returned executed. However, on that same date, the summonses for the remaining defendants were returned as unexcuted. According to the un-executed service on O.R. Cartwright, E. Roff, R. Evans, and J. Vance, no such employee existed at the Tygart Valley Regional Jail ("TVRJ"). According to the un-executed service on J. Meadows, he

was no longer employed at the TVRJ, and apparently, no forwarding information was available. On July 26, 2012, an Order was entered directing the plaintiff to supply the Court, within twenty-one days, an updated address for these defendants, and/or proper names for O.R. Cartwright, E. Roff, and R. Evan. The plaintiff was forewarned that failure to do so in the allotted time could result in the dismissal of those defendants from this action without further notice. On August 23, 2012, an Order was entered giving the plaintiff until November 1, 2012, to provide updated address and/or proper names for the five unserved defendants. To date, the plaintiff has failed to comply.

On June 11, 2012, Zack Currence filed an answer to the amended complaint. On July 26, 2012, the undersigned issued a First Order and Notice Regarding Discovery and Scheduling. On February 21, 2013, Zack Currence filed a Motion for Summary Judgment. On February 27, 2013, a Roseboro Notice was issued. To date, the plaintiff has not responded.

## II.    Contentions of the Parties

### A.    The Complaint

In the complaint, the plaintiff alleges that while incarcerated at the TVRJ, he was assaulted by various correctional officers. He indicates that he first requested a grievance form from C.O. Evans, who refused to provide the grievance. Soon thereafter, the plaintiff alleges that the named defendants locked his housing pod down and came to his cell where they maced him and then beat and kicked him repeatedly. The plaintiff further alleges that the officers then took him to the recreation yard where they continued to kick and beat him. The plaintiff alleges that this assault resulted in injuries to his shoulder, knee, nose, and mouth plus serious back problems that have persisted. For relief, he states that he "would like the right action taken and in the future that his does not happen to anybody else and would like to have the right steps taken in this matter." (Doc. 15, p. 9).

**B.    The Defendant's Motion for Summary Judgment**

In his memorandum in support of his motion for summary judgment, the Zack Currence contends that the plaintiff's complaint fails as a matter of law because he failed to exhaust his administrative grievances in connection with his claims. In addition, the defendant maintains that the plaintiff has failed to properly identify a constitutional or federal right of which he was allegedly deprived.[1] The defendant further maintains that, even assuming arguendo, that the plaintiff has properly identified a basis for his § 1983 claim, his claim against Zack Currence fails as a matter of law because the amended complaint refers to Officer Currence solely in his official capacity as an officer, or C/O II.[2] Additionally, to the extent that the plaintiff seeks injunctive relief, the defendant maintains that said claim is moot.  Finally, the defendant contends that the plaintiff's claims should be dismissed because he failed to cooperate in discovery.

### III.    Standard of Review

**A.  Summary Judgment**

---

[1] Because the undersigned finds that the plaintiff has failed to exhaust his administrative remedies, he has chosen not address this claim.  However, it should be noted that although not explicitly stated, it is clear that the plaintiff is raising  a claim of excessive force. The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment.     Whitley v. Albers, 475 U.S. 312 (1986).  The use of excessive force may constitute cruel and unusual punishment.   Hudson v. McMillian, 503 U.S. 1 (1992).

[2] Of late, defendants in prisoner filings, routinely assert that they have been named in their official capacity, and therefore, are not persons for purposes of § 1983. Again, because the undersigned find that this matter is due to be dismissed for failure to exhaust, he has not chosen to address this issue. However, it is pertinent to note that the plaintiff completed this court's form complaint as required by our local rules.  Said form requires the plaintiff to name the defendants and asks the plaintiff to list their position, place of employment, and address.  It does not ask whether the defendant is being sued in his/her individual or official capacity. With respect to Zack Currence, it would appear that the plaintiff has sued him in his individual capacity as it is clear that he is alleging that said defendant was personally involved in the alleged use of excessive force.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather

4

than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

The West Virginia Regional Jail Authority makes available to its inmates a grievance procedure through which they may seek review of complaints related to the conditions of their confinement. Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the

---

[3] Id.

complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

    The record reflects that the plaintiff filed an administrative grievance with the Administrator of the TVRJ on June 13, 2011. In filling out the reason for the grievance, the plaintiff wrote:

> My problem is that the write up that I got from Offer [sic] is not true as it is written cause none of it is true cause I was on my bunk when he and the offer [sic] came in on me and that is

6

why I'm writing this grievance for.

(Doc. 63-2). In his deposition, the plaintiff acknowledged that the only grievance he filed regarding the alleged incident was the one filed on June 13, 2011, set forth above, and that he did not appeal the administrator's response. (Doc. 63-1, pp. 14-15). Accordingly, it is clear that the plaintiff never filed a grievance alleging excessive force on the part of Zach Currence, or any other correctional officer at the TVRJ, and his complaint is due to be dismissed for failure to exhaust his administrative remedies.

**B. Injunctive Relief Moot**

As previously noted, in the relief section of amended complaint, the plaintiff asks that he "would like to have the right action taken and in the future that this does not happen to anybody else and would like to have the right steps taken in this matter." (Doc. 15, p. 9). Nowhere does the plaintiff make any claim for money, but instead, seeks injunctive relief. However, the United States Court of Appeals for the Fourth Circuit has recognized that if an inmate is transferred to another facility, the inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot. See Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); see also, Alaj v. Smith, 108 Fed. Appx. 743, 2004 WL 1663968 (4th Cir. July 22, 2004)(observing that where an inmate seeking equitable relief from conditions at one facility was transferred to another institution, his claims were moot). The incident at issue in this case allegedly occurred at the TVRJ on June 12, 2011. (Doc. 63-1, p. 4). Since that time, the plaintiff has been relocated three times: first, to the Mount Olive Correctional Center; then, to the Stevens Correctional Center; and finally, to the Pruntytown Correctional Center, where the plaintiff has been incarcerated since approximately August 2012. (Doc. 63-1, pp. 2-5). Because the plaintiff has been transferred from the facility where the incident raised in the complaint allegedly occurred, his claim for injunctive relief - the only relief he appears to have requested - is now moot.

7

### V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendant's Motion for Summary Judgment (Doc. 61) be **GRANTED,** and the plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** as to Zack Currence for failure to exhaust administrative remedies and be **DISMISSED AS MOOT** to the extent that it seeks injunctive relief. It is further recommended that the plaintiff's complaint as it relates to R. Evans, O.R. Cartwright, V. Lance, E. Roff, and J. Meadows be **DISMISSED WITHOUT PREJUDICE** for failure to obtain service.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: May 15, 2013

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE